11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Dan Dwayne Taggart

Appellant

Vs.                   No.
11-01-00284-CR  B Appeal from Taylor County

State of Texas

Appellee

 

The jury
found that Dan Dwayne Taggart was guilty of the Aunauthorized use of a motor vehicle.@[1] 
Appellant filed his Aelection to have punishment assessed by the court@ and entered pleas of Atrue@ to the allegations in the indictment of two prior felony convictions.[2]  The trial court assessed his punishment at
confinement for 12 years.  We affirm.

                                                                    Point
of Error

There is
no challenge to the sufficiency of the evidence.  The sole point of error reads in full as shown:

The trial
court abused its discretion in allowing testimony regarding an extraneous
offense alleged to have been committed by Appellant, without sufficient reason
to justify the exception to the general prohibition of such evidence by Tex. R.
Evid. 404(b), resulting in harm to the substantial rights of the appellant.

 

                                                              Preservation
of Error

The State
argues that the issue was not properly preserved for appellate review.  The State also argues in the alternative
that the trial court did not err in permitting the State to prove the
extraneous prior conduct because it was relevant to rebut appellant=s defensive theory that he believed that he
had permission to use the vehicle Abased on prior consent.@ 








Appellant=s lawyer filed a AMotion in Limine@ asking the trial court to order the
prosecutor not to mention or refer to Aany extraneous offenses@ by appellant without first approaching the bench and asking for a
hearing outside the presence of the jury to determine the admissibility of any
such testimony.  After cross-examination
of the State=s first witness, the prosecutor told the
court that he had something which he needed to present to the court Aoutside the presence of the jury.@ 
After the jury left the courtroom, the reporter=s record shows the following proceedings in
open court:

[PROSECUTOR]:
Your Honor, at this time I=d like to be able to go into testimony with this witness in regards
to a previous incident in which [appellant] had borrowed the truck again
and had been told that he was to return the vehicle and when and where and that
did not occur.  And at that occasion he
was warned [about what would happen if he did not deliver the truck at the
designated time and place].  This is
extraneous conduct, but...we present this evidence...under 404(b) to show a
lack of mistake or accident.

 

                                                            *   *  
*

 

[The
witness] would testify [that appellant] had been given this truck or a vehicle
[and he did not return it to the designated place at the designated time], but
they did not file charges.  But as a
result of that they specifically sat down and specified what would happen with
him if he did not return the truck.

 

                                                            *   *  
*

 

THE COURT:
Okay.  I=ll overrule the objection.  I=ll let you do it.  (Emphasis added)

 

If the
trial court had not made its ruling, we would agree that the motion in limine
was not sufficient to preserve the issue for appellate review and that the
record does not show any objection other than what was urged in the motion in
limine.  See Montgomery v. State, 810
S.W.2d 372, 387 (Tex.Cr.App.1991)(on rehearing).  We will assume, without deciding, that the trial court=s ruling was sufficient to preserve the
complaint for appellate review.   The
trial court knew that appellant=s lawyer was trying to exclude the extraneous conduct and that the
State was offering it under Rule 404(b) to Ashow a lack of mistake or accident.@

                                                               Relevant
Testimony








The State=s first witness was David Bowen.  He was a supervisor for Rapid Masonry, a
construction company which was owned and operated by David=s brother, Robert Bowen, and his brother=s wife, Debbie Bowen.  Robert and Debbie were in Abilene, and David
was supervising a job in Marlin.  David
testified that appellant worked for him at the job in Marlin and that appellant
asked for permission to use a truck to go from Marlin to Abilene.  Robert agreed to let appellant drive the
truck from the job in Marlin to their place of business in Abilene with the
understanding that appellant was to Ago straight to the shop@ in Abilene.  The morning after
appellant left Marlin in the company truck, David received a phone call about
the Aabsence of the vehicle@ at their place of business in Abilene.  On cross-examination, this witness agreed
that it was not usual but that they would sometimes, Aevery now and then,@ 
provide a ride to and from the job location when they were working away
from Abilene.  Appellant=s lawyer also asked David if he knew that the
company foreman on their job at Iraan had given appellant Apermission to take that truck and bring it
home on the weekends.@   On redirect examination after the trial
court ruled that it would let the State prove the prior incident to show Aa lack of mistake or accident,@ the record shows:

Q: David,
we mentioned earlier in regards to a similar incident where [appellant] had
borrowed a vehicle and the same type conduct had occurred; is that correct?

 

A:
Correct.

 

Q: And
approximately in relations to this unauthorized use of a motor vehicle, did
that occur prior to this incident?

 

A:
Yes.  It happened either a week or two
weeks before that.  He was supposed to
have had it back on a Friday, and I think he actually got it back Saturday.

 

Q: And
because of that conduct, when you allowed him to use this [truck] a second
time, did you specify what the consequences of his action would be?    

        

                                                            *   *  
*

 

A: What I
warned him was if he didn=t get it back Robbie would take action.

 








The State=s second witness was Debbie Bowen.  She testified that she and her husband owned
Rapid Construction and Autos Plus.  Her
brother-in-law, David, worked for them as a foreman and superintendent.  She said that they allowed appellant to use
their truck Afor a one-time deal to get himself where he
needed to be.@  She
testified that he was allowed to drive the truck from Marlin to Abilene when
they finished work on Friday, that he was to bring the truck to their company
lot in Abilene, and that he was to park it outside their fence.  They told him where to leave the key, and
they also told him that they would move the truck inside their fence after he
left it there.  She said that the truck
did not arrive that afternoon.  On
Saturday, they came into town, and the truck was still not there.  They saw appellant in the truck and tried to
get his attention.  They went back to
the company lot, but appellant did not bring the truck.  This witness testified that they had Ahad a problem with him before,@ and her testimony about the prior incident
reads in relevant part as shown:

Q: Now,
you made mention of a fact or an occasion in which [appellant] had borrowed the
truck before and it not being returned.

 

A: That
was the week before.  Yes, sir.

 

Q: And
what was the circumstances surrounding that?

 

A: He kind
of had two people telling him what to do. 
Robbie, my husband, is the one that authorized it to let him have the
truck....And David, you know, the foreman was seeing to it that he just used it...to
get him where he needed to be and to get it back to us as soon as possible.

 

And then
his excuse when he didn=t come in that day was that he didn=t understand the communication....But Robbie gave him the benefit of
the doubt.

 

And I was
a witness to Robbie being pretty put out because [appellant] had not brought
the vehicle back as Robbie had instructed....Then he gave him the benefit of
the doubt.

 

And then
the next time...we made sure there would be no misunderstanding the second time
and were very firm in our instructions so this would never happen again.

 

The next two witnesses
did not testify as to appellant=s permission to use the company truck. 


The State=s fifth witness was Robert Bowen.  He testified that he and his wife owned
Rapid Masonry and Autos Plus, that his brother worked for them, and that
appellant was permitted to drive a truck from their out-of-town job in Marlin
to their office in Abilene.  Robert
testified that he had a discussion with his brother about Ahow it would be handled@ when appellant wanted to borrow a truck to
come to Abilene from the job in Marlin Abecause of a prior incident the week before.@ 
Robert=s testimony about the prior incident reads in
relevant part as shown:

Q:
Okay.  Let=s back up then and let=s talk about this prior incident. 
Was there a vehicle being used by [appellant] on that incident?








A: We had allowed him to
take the same vehicle the week prior.  I
believe it was the week prior, maybe two weeks prior, to attend a meeting that
he had and he did basically the same thing. 
He used it all weekend without permission.

 

At that time I cut him a
little slack, and we had give him explicit instructions on how to return the
vehicle, how to - - you know, where to leave it and so forth.  But I assumed, well, maybe it wasn=t communicated properly so I cut him...some slack the first time.

 

                                                            *   *  
*

 

Q: And what specifically
did you tell [appellant] would occur if he did not do that?

 

A: I let him know that if
he did not show up I would file charges on him.  (Emphasis added)

 

Robert also testified that he saw appellant driving the truck on the
Saturday after it should have been returned. 
Robert said that appellant waived at him and that appellant Ajust flat outrun@ him when he was chasing him to get the truck
back.  On cross-examination, Robert
testified that it would be Avery unusual@ for
him to let appellant have the use of a vehicle to get to and from the job site
because appellant was a bricklayer. 
Robert said bricklayers Ausually didn=t get
a vehicle.@

After the State rested, appellant=s lawyer called John Williams to testify for the defense.  This witness testified that he had worked
for Bowen Construction, that the company would let him use a company vehicle to
run errands, that the company would let him Akeep it over the weekend,@ that the company would let him drive it Afrom various job sites around the state back and forth from Abilene,@ and that this was a Acommon practice with the Bowens and their
employees.@  On
cross-examination, Williams admitted that he was Acurrently in the Taylor County Jail on some felony charges.@

                                                     Defensive
Theory

During his closing argument to the jury, appellant=s lawyer urged the jury to acquit his client
because of reasonable doubt as to whether he was guilty of Aunauthorized use@ of the vehicle.  Appellant=s lawyer attempted to attack the credibility of the Bowens= testimony, and he argued in relevant part:

You know, they say this is very limited use,
one-time use of this pickup.  So it=s not like it could have happened on five or
six other occasions with this white Chevrolet pickup.  It=s a one-time deal.








 

You know, and we heard
from John Williams.  And he probably
wasn=t the best of witnesses either.  I mean, any time you got to rely on bringing
someone in here that=s in
an orange jumpsuit furnished to them by Taylor County.  That=s not what I=m
exactly looking for when I start thinking who do I want to be a witness for
me.  But you take what you can get as
far as who was working for the Bowens. 
Well, Ronnie Connally was working for them and John Williams was working
for them.

 

And what did we hear from
John?  Well, he got to use a truck from
them all the time.  Something all the
Bowens claimed, no, that doesn=t happen.  We don=t let our employees use trucks very
often.  It=s very rarely that we let our employees use a truck.  John said it happened a lot.  Said he got to bring trucks home from the
job site, keep them over the weekend and then go back.  Said other employees got to do that as well.

                                                  Controlling
Authority

The Court of Criminal Appeals discussed Rule 404(b) in Santellan v.
State, 939 S.W.2d 155, 168 (Tex.Cr.App.1997), pointing out that Aextraneous offense evidence@ is admissible if the proponent of the
evidence persuades the trial court that it tends to establish Aabsence of mistake or accident.@ 

The Court of Criminal Appeals also discussed Rule 404(b) in Ransom v.
State, 920 S.W.2d 288, 300 (Tex.Cr.App.1996)(on rehearing), cert. den=d, 519 U.S. 1030 (1996), saying:

It is the trial court=s task to determine whether extraneous
offense evidence is relevant to a non-propensity purpose; the trial court=s ruling is entitled to deference and will be
reversed only for abuse of discretion.

 

The Court of Criminal Appeals also discussed Rule 404(b) in Montgomery
v. State, supra at 391, pointing out that appellate courts must Auphold the trial court=s ruling@ on objections under Rule 404(b) as long as the trial court=s ruling is within the Azone of reasonable disagreement@ and that:

Whether objected-to
evidence of Aother crimes, wrongs, or acts@ has relevance apart from character
conformity, as required by Rule 404(b), supra, is also a question for the trial
court.  The trial judge must conclude
that the evidence tends in logic and common experience to serve some purpose
other than character conformity [and] to make the existence of a fact of consequence
more or less probable than it would be without the evidence.  An appellate court owes no less deference to
the trial judge in making this judgment than it affords him in making any other
relevancy call.

 








Appellant
cites Webb v. State, 36 S.W.3d 164 (Tex.App. - Houston [14th Dist.] 2000, pet=n ref=d), and Perry v. State, 933 S.W.2d 249 (Tex.App. - Corpus Christi 1996,
pet=n ref=d).  Both of those cases are
factually distinguishable.  In Webb,
the State proved that the defendant had sexually assaulted another topless
dancer because it was a Asignature type@
offense.  The Houston Court ruled that
the extraneous offense did not have any relevance apart from the defendant=s  Acharacter or his actions in conformity
therewith.@  In Perry,
the Corpus Christi Court ruled that the extraneous offense evidence, proof of
defendant=s prior drug conviction, was not relevant for
anything other than to show his Abad character and conformity therewith.@  In the case before us, the
evidence was relevant to show that appellant could not have formed a good faith
belief that he could use the truck beyond the permission which had been
given.  This relevant evidence showed
that appellant had been warned because of his conduct on the earlier occasion
when he kept the vehicle longer than was authorized.  

                                                                This
Court=s Ruling

We find
that the trial court did not abuse its discretion by permitting this
proof.  The evidence was admissible
under Rule 404(b) to prove Aabsence of mistake or accident.@  The sole point of error is
overruled.             

The
judgment of the trial court is affirmed.

 

BOB
DICKENSON

SENIOR
JUSTICE

May 16, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and Dickenson, S.J.[3]











[1]TEX. PENAL CODE ANN. '
31.07 (Vernon 1994) provides that it is an offense to knowingly operate a
motor-propelled vehicle Awithout the effective consent of the owner@ and that the offense is a Astate jail felony.@





[2]The present offense was committed after  a final conviction in Lubbock County in 1993
for the unauthorized use of a motor vehicle. 
That offense was committed after a final conviction in Jones County in
1989 for possession of methamphetamine. The enhancement allegations raised the
punishment for a Astate jail felony@ to
punishment for a Asecond-degree felony@
pursuant to TEX. PENAL CODE ANN. '
12.42(a)(2) (Vernon Supp. 2002).   





[3]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.