

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00090-CR

_____

BARRY GREEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 16F0882-102

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Barry Green pled guilty to aggravated assault with a deadly weapon[1] and elected to have a jury assess his punishment. After proffering several witnesses, the State asked to present extraneous evidence of Green's history of violence toward his ex-wife. The State argued that this evidence was admissible to rebut the defensive theory developed in Green's cross-examination of State witnesses and his opening statement. The State believed Green had left a false impression with the jury that Green was not a violent person toward his romantic partners. The trial court agreed with the State and permitted this rebuttal, and Green appeals. We affirm the trial court's judgment and sentence.

## I.    Background

The testimony established that Green had a tumultuous relationship with his girlfriend, Cherie Bourland. Bourland lived with Green in rural Bowie County. However, in September 2016, the pair separated, and Bourland began staying with Brad Hooks, who lived nearby. Later that month, Bourland returned to Green's house to retrieve her personal property from Green, and the pair rekindled their relationship. Bourland stayed at Green's house for about three days afterwards.

On September 18, Green and Bourland had another argument, and Bourland left. Green then went to Hooks' house to confront him. As the two men argued, Hooks was standing on his porch, and Green was brandishing a shotgun. When Hooks turned to go back in his home, Green

---

[1]*See* TEX. PENAL CODE ANN. § 22.02 (West 2011).

2

shot Hooks in the back. Green then took Hooks to an emergency room where he was treated and recovered. Green was arrested and charged with aggravated assault with a deadly weapon.

About eight days after the shooting, Bourland applied for a protective order against Green.[2] She attached a sworn statement alleging that Green abused her on September 26, 2016.[3] Important to the issues raised at Green's trial, Bourland's written statement alleging abuse stated that she went to Green's home on or about September 18, the date of the shooting. As discussed below, this statement differed somewhat from her trial testimony.

## II. Did the Trial Court Err in Concluding that Green Opened the Door to Admission of Rebuttal Testimony?

### A. Factual and Procedural Background

In this appeal, Green challenges the State's use of extraneous evidence that Green was abusive and violent toward his ex-wife, Lacie Meyer, sometime in 2013. The State argued that Green had opened the door to rebuttal testimony regarding Green's violence toward romantic partners by suggesting that Bourland falsely accused him of abusing her. The trial court agreed and overruled Green's objection to the introduction of that evidence. We first examine the record to determine what Green said regarding this topic.

During Green's voir dire of the venire panel, he discussed the topic of extraneous-offense evidence in punishment proceedings and then transitioned to the subject of domestic violence. He asked the following questions:

---

[2]*See* TEX. FAM. CODE ANN. § 85.001 (West 2014).

[3]The trial court entered the protective order October 11, 2016. Bourland's written statement said that an emergency protective order, *see* TEX. FAM. CODE ANN. § 83.001 (West 2014), was issued around July 20, but that order was not produced at trial.

3

- "But you understand in a lot of domestic violence cases, like everything else, there's always two sides to every story, correct?"

- "And do you also agree that a lot of times people make up false allegations about domestic violence?"

- "If you're called to sit as a juror in this case, and there's an allegation of domestic violence, can you make the State prove to you beyond a reasonable doubt that that domestic violence happened?

- "And if you don't think the witness that's presenting that evidence is credible, what should you do?"

In his opening statement, Green suggested that Bourland had lied when she applied for the protective order against Green. In particular, and in response to the State's opening statement wherein it suggested that the jury would not look favorably on either victim Hooks or Bourland, Green argued that the jury would have to determine whether these witnesses were credible. With respect to Bourland specifically, Green told the jury, "[S]he just made the statement that he abused her. Those are allegations, folks. You're going to see this man has never been convicted of that. You're going to see what testimony that Ms. Bourland gave under oath, and we'll see if it matches her testimony here today."

Green then told the jury they would hear evidence that "Cherie Bourland didn't just show up that morning [of the shooting] at [Green's] house. . . ." Green continued, "[T]he evidence is going to show you, three or four days prior to this, about 11 o'clock at night, she is banging on this man's windows to get into his house and banging on his door. . . . [S]he spent three or four days with him . . . ." Green argued that these inconsistencies by Bourland would undermine her credibility.

4

During the State's direct examination of Bourland, she acknowledged that she had been at Green's house for "a couple of nights" before the shooting. On cross-examination, Green questioned Bourland about text messages Green received on his cell phone about 11:00 p.m. on September 14, 2016, four nights before Green shot Hooks. Bourland admitted having sent those texts. She said that she sent the texts when she arrived at his home to surprise him. She also acknowledged "bang[ing]" on his door even though she had earlier testified that she had ended her relationship with Green because she was so afraid of him.

Green then asked Bourland about her application for a protective order and her statement that she had gone to Green's house on September 18 to retrieve her personal property. She then acknowledged that, on direct examination, she had testified that she had been at Green's house for three or four days before September 18. Pressed on this inconsistency between the statement in her application for a protective order and her direct examination testimony, Bourland agreed with Green's characterization of her written statement as a lie made under oath.[4]

## B. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*,

---

[4]Green's counsel asked, "But you led this Court to believe that on that day was the only day you were down there, didn't you? Because that's what this document says, is I went down there on that day, right?" Bourland answered, "Yes, sir." Counsel continued, "And that's not the truth, is it?" Bourland responded, "No, Sir." Counsel asked, "Okay. You just testified with -- so you signed a document untruthful under oath, correct?" Bourland replied, "Yes, sir."

5

810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

A defendant's opening statement may reveal a defensive theory and thus open the door to possible rebuttal evidence from the prosecution, *see Bass v. State*, 270 S.W.3d 557, 562–63 & n.7 (Tex. Crim. App. 2008), so too may a defendant's cross-examination of State's witnesses. *See Powell v. State*, 63 S.W.3d 435, 438–39 (Tex. Crim. App. 2001).[5] (Powell's cross-examination of complainant and his opening statement claimed he could not have committed the alleged indecency with a child because he never had the opportunity). In *Gipson v. State*, 619 S.W.2d 169 (Tex. Crim. App. [Panel Op.] 1981), the appellant testified that he committed the charged rape because he feared his co-defendants. *Id.* at 170. This was sufficient to open the door to extraneous evidence of another rape he committed upon a different victim a week prior where he told his confederates to leave the room, because the rebuttal evidence showed, "No one used force or threats against the appellant . . . [and] apparently, he wanted to commit the act." *Id.*

---

[5]*Cf. Perry v. State*, 933 S.W.2d 249, 254 (Tex. App.—Corpus Christi 1996, pet. ref'd). In a trial for possession of cocaine, the defense did not open the door to extraneous rebuttal evidence—that he had a prior arrest for cocaine possession—where his opening statement urged he had had no exclusive access to and did not own the vehicle in which the narcotics were found. The Corpus Christi court wrote,

> Evidence of appellant's prior drug conviction is precisely the type of evidence forbidden by Rule 404(b). The prior conviction does not make an elemental fact more probable; whether appellant knows or does not know 'what cocaine looks like' is neither an element of the crime nor an issue raised by the defense. Further, the fact that appellant had cocaine in his possession in 1990 does not affirmatively link him to cocaine in the ashtray of a borrowed vehicle in 1994.

*Id.*

6

**C.     Analysis**

Green accused Bourland of lying on her application for the protective order.  He did this on cross-examination by pointing out an inconsistency between her trial testimony—that she had been at Green's house at least three days before September 18—and her statement in the protective order application—that she had gone to his house on that date.  He also questioned her credibility in his opening statement, and in voir dire, he received affirmative answers to questions suggesting that, "a lot of times," applicants provide false information in seeking protective orders.  While these tactics mostly impeached Bourland's credibility as a witness, Green did not specify that she lied about the timing of the events only, but also implied that she lied about the abuse as well.  Accordingly, Green called into question the veracity of Bourland's allegations that Green abused her during their relationship.  Therefore, Green opened the door to rebuttal testimony about Green's abusive behavior with his romantic partners.

In addition, at a hearing on the State's request to offer evidence rebutting what the State called a "false impression" of Green's abusive conduct with his romantic partners, the court identified and summarized a handful of cases it had read and analyzed.[6]  This demonstrates that the trial court was making its decision based on a reasoned review of applicable legal standards.  Said another way, the trial court clearly made its decision based on "guiding rules or principles" of evidentiary law.  *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995) ("A trial

---

[6]The trial court summarized, on the record, the following cases:  *Dabney v. State*, 492 S.W.3d 309 (Tex. Crim. App. 2016); *Jaubert v. State*, 74 S.W.3d 1 (Tex. Crim. App. 2002); *Darby v. State*, No. 06-15-00042-CR, 2015 WL 6559205 (Tex. App.—Texarkana Oct. 30, 2015, no pet.) (mem. op., not designated for publication).  The court also discussed Rule 404(b) of the Texas Rules of Evidence and Article 37.07 of the Texas Code of Criminal Procedure.  *See* TEX. R. APP. P. 404(b); TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2017).

7

court abuses its discretion when it acts without regard for any guiding rules or principles."). Consequently, we cannot say that the trial court abused its discretion in admitting the State's rebuttal evidence. Green's point of error is overruled.

## III. Conclusion

For all of the foregoing reasons, we affirm the trial court's judgment.


                                        Ralph K. Burgess
                                        Justice

Date Submitted:      November 16, 2017
Date Decided:        February 16, 2018

Do Not Publish