Kevin PERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–95–303–CR.

Court of Appeals of Texas,
Corpus Christi.

Sept. 26, 1996.

Rehearing Overruled Nov. 21, 1996.

Vernon Harrison, Bay City, for appellant.

Steven E. Reis, District Attorney, Bay City, Robinson C. Ramsey, San Antonio, for state.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellant, Kevin Perry, was indicted for possession of cocaine, in an amount more than one gram but less than four grams, with intent to distribute, after a police officer conducting a traffic stop found "rock" cocaine in the ashtray of the vehicle appellant was driving. A jury found appellant guilty and assessed punishment, enhanced by evidence of two prior felony convictions for possession of cocaine, at twenty-five years confinement. By three points of error, appellant challenges the admission of evidence seized from his vehicle and the admission of extraneous evidence. We reverse and remand.

## BACKGROUND

Officer Richard Hempel of the Bay City Police Department observed appellant run a stop sign. During the routine traffic stop of appellant, Officer Hempel ran an information check which revealed that appellant had failed to appear in two previous traffic cases. Appellant was placed under arrest.

Officer Hempel and Officer Coombs, who appeared at the scene to provide backup, then inventoried the vehicle's contents. The officers testified that while checking the vehicle's partially opened ashtray for change, Coombs found a partially unwrapped piece of white paper towel containing eleven rocks of crack cocaine. Coombs testified that he checked the ashtray because he was accustomed to keeping change in the ashtray of his car and knew that other people did the same. He contends that he was not searching for drugs and did not expect to find any.

## INVENTORY SEARCH

By his first and second points of error, appellant contends that the trial court erred in denying his motion to suppress the evidence seized from his vehicle and allowing that evidence to be introduced at trial. Specifically, appellant argues that his arrest was a mere pretext to search his vehicle and that the warrantless search went beyond a mere inventory search. Appellant argues that the inventory of the ashtray was an impermissible search of a "closed container."

An appellate court, when reviewing a ruling on a motion to suppress evidence, views the evidence in the light most favorable to the trial court's ruling and defers to the trial court's findings. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Davis v. State*, 829 S.W.2d 218, 220 (Tex.Crim.App.1992); *State v. Mireles*, 904 S.W.2d 885, 887 (Tex.App.—Corpus Christi 1995, pet. ref'd). Absent a clear abuse of discretion, the ruling on the admissibility of evidence will not be disturbed. *Rivera v. State*, 808 S.W.2d 80, 96 (Tex.Crim.

App.1991); *see Smith v. State*, 683 S.W.2d 393, 405 (Tex.Crim.App.1984).

■ An inventory search is a judicially created, well-defined exception to the warrant requirement of the fourth amendment.[1] *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). For a warrantless inventory search to be valid, (1) the original impoundment of the vehicle must be lawful (*South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)); (2) the purpose of the inventory search must be to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property, and to guard the police from danger (*Id.* at 368–70, 96 S.Ct. at 3097); (3) the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search (*Colorado v. Bertine*, 479 U.S. 367, 373–74, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987)); or as a ruse for a general rummaging in order to discover incriminating evidence (*Florida v. Wells*, 495 U.S. 1, 3–5, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990)).

■ We first consider whether appellant's arrest and the vehicle's subsequent impoundment were lawful. Officer Hempel testified that he stopped and arrested appellant for the traffic offense of running a stop sign. Though one is not usually arrested for running a stop sign, the Texas Court of Criminal Appeals has held that as long as the actual violation occurs, law enforcement officials are free to enforce the laws and detain a person *for that violation*, regardless of whatever the usual practices or standards of the local law enforcement agency are. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App.1992). Hempel also testified that appellant failed to produce proof of liability insurance, and that he became aware of appellant's history of failing to appear in court on prior traffic and criminal charges. Based on all of these factors, Hempel decided to arrest appellant. We conclude that the detention and subsequent arrest were lawful. *See id.*

---

1. U.S. Const. amend IV provides:

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly the place to be searched, and the persons or things to be seized.

We next consider the propriety of conducting the inventory. Once a motor vehicle operator has been put under arrest and taken into custody, it is proper to impound the vehicle and conduct an inventory when impoundment is the only reasonable alternative available to protect the vehicle. *Evers v. State*, 576 S.W.2d 46, 50 (Tex.Crim.App. 1978). Both officers testified that they inventoried the vehicle because they were responsible for anything missing from the vehicle once appellant was placed in custody. During cross-examination, Coombs testified,

> We don't consider it a search. It's simply an inventory of the valuables that are within the vehicle and that's done for our safety as well as the vehicle owner or the occupant's safety to make sure that everything that's of value in the vehicle is logged down and everybody knows what was there to help prevent theft.

Hempel testified that a search warrant was not necessary because they were not conducting a search, but merely an inventory "to log any property of value, to protect the arrestee's rights, and to protect their interests."

Based on this testimony, we conclude that the officers had good reason to conduct the inventory.

Finally, we consider the manner in which the search was conducted. In *Wells*, the Supreme Court affirmed the validity of warrantless inventory searches which follow a standardized police procedure requiring the opening of closed containers in impounded vehicles. *Wells*, 495 U.S. at 3–5, 110 S.Ct. at 1635. *Wells* concerned a defendant stopped in Florida for driving under the influence of alcohol. The state trooper forced open a locked suitcase containing marijuana located in the trunk of the car. The Court held that since the Florida Highway Patrol had no policy concerning the opening of closed containers, the marijuana found in the locked suitcase was properly suppressed.

In 1994, however, the Texas Court of Criminal Appeals considered a similar factual scenario in *Autran v. State*, 887 S.W.2d 31 (Tex.Crim.App.1994) and held that inventory searches of closed containers violated Article 1, Section 9 of the Texas Constitution.[2] In *Autran*, the defendant was stopped for failure to drive within a single lane.[3] The defendant, accompanied by his adult son, told the officer that they were returning to Florida from a visit to Houston. When the defendant's response as to how long he had owned the vehicle did not correspond with the date on the vehicle's registration certificate, he was asked for permission to look inside the vehicle.

Finding nothing suspicious in the passenger compartment, the deputy then requested permission to look in the trunk. The defendant responded, "no problem," and opened the trunk. When the officer attempted to open an ice chest located in the trunk, the defendant unsuccessfully attempted to close the trunk. The officer immediately arrested the defendant for failure to "drive as nearly as practical entirely within a single lane," and the defendant's son for public intoxication.

Following an established department policy, the officer inventoried all containers in the vehicle and found large sums of cash. It was later discovered that the money was covered with cocaine. Cocaine was also found in a key container under the driver's seat.

The Texas Court of Criminal Appeals, in a plurality opinion, held that the Texas Constitution provides a privacy interest in closed containers which is not overcome by the general policy considerations underlying an inventory. *Autran*, 887 S.W.2d at 41–42. The officer's interest in the protection of a person's property can be satisfied by simply recording the existence of and describing or photographing, or both, the closed container. *Id.* In other words, courts will no longer "presume the search of a closed container reasonable under [the Texas Constitution] simply because an officer followed established departmental policy." *Id.*

Our main inquiry is whether a vehicle ashtray is a closed container for the purposes of

---

2. Tex. Const. art. I, § 9 provides the people with protection against unreasonable searches and seizures.

3. Tex.Rev.Civ. Stat. Ann. art. 6701d, § 60(a).

inventory searches. No Texas court has considered this issue. We therefore look to other jurisdictions for guidance.

In *Wells,* while conducting the inventory search, the trooper first found marijuana "cigarette butts" in the vehicle's ashtray. The defendant moved to suppress the admission of the evidence found in the suitcase and in the ashtray. The Florida Supreme Court held that "[s]ince the cigarette butts were not inside any closed or locked container, the suppression of the butts was improper." *Florida v. Wells,* 539 So.2d 464, 469 (Fla. 1989) (*citing Bertine,* 479 U.S. at 373–78, 107 S.Ct. at 742–44).

In its review of *Wells,* the U.S. Supreme Court restated the fact that "an inventory search of the car turned up two marijuana cigarette butts in an ashtray and a locked suitcase in the trunk." *Wells,* 495 U.S. at 2, 110 S.Ct. at 1634. The Court agreed that the evidence found in the suitcase was properly suppressed because it was a closed container and the Florida Highway Patrol had no policy on the opening of closed containers. The Court did not, however, question the lower court's holding on the search of the ashtray.

We conclude by inference that the Supreme Court agreed with the Florida Supreme Court's holding that the ashtray was not a closed container. We therefore hold that the ashtray in the present case was also not a closed container. The trial court did not abuse its discretion by admitting the evidence at trial as an incident of a proper impoundment and inventory search.

We overrule appellant's first and second points of error.

## EXTRANEOUS OFFENSE EVIDENCE

By his third point of error, appellant contends that during the guilt-innocence stage of the trial, the trial court improperly allowed Officer Christopher Crummet to testify about appellant's prior arrest for possession of cocaine.[4] Appellant claims that Rules 403 [5] and 404(b) [6] of the Texas Rules of Criminal Evidence prohibit the use of such testimony.

In order for evidence of an extraneous offense to be admissible, a two-part test must be met. First, the transaction must be relevant to a material issue in the case, and second, the relevancy value of the evidence must outweigh its inflammatory or prejudicial potential. *Montgomery v. State,* 810 S.W.2d 372, 390–91 (Tex.Crim.App.1990); *Crank v. State,* 761 S.W.2d 328, 342 (Tex. Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). We review the trial courts actions regarding the admissibility of such evidence under an abuse of discretion standard. *Saenz v. State,* 843 S.W.2d 24, 26 (Tex.Crim.App.1992). As long as the trial court's ruling was at least within the zone of reasonable disagreement, an appellate court will not intercede. *Montgomery,* 810 S.W.2d at 391. However, where an appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequences more or less probable than it would otherwise be, then it can be said that the trial court abused its discretion in admitting that evidence. *Id.*

We first address the trial court's determination of relevance. It is the general

4. Appellant was stopped in 1990 by Officer Crummet in the same area of Bay City, driving the same vehicle, violating the same traffic law, at approximately the same early morning hour. Appellant was subsequently arrested when the officer saw cocaine on the passenger seat of the vehicle. Appellant pleaded guilty to the possession charge.

5. Tex.R.Crim. Evid. 403 provides
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

6. Tex.R.Crim. Evid. 404(b) provides
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

rule that an accused may not be tried for some collateral crime or for being a criminal generally. TEX.R.CRIM. EVID. 404(b); *Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim.App.1983). In certain circumstances, however, extraneous offenses are allowed if they fall within a recognized exception. In that regard, extraneous evidence must have relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. TEX. R.CRIM. EVID. 404(b); *Montgomery*, 810 S.W.2d at 394. That is, the evidence must make more probable or less probable (1) an elemental fact, (2) an evidentiary fact that inferentially leads to an elemental fact, or (3) defensive evidence that undermines an elemental fact. *Montgomery*, 810 S.W.2d at 387.

▮ To prove its case against appellant, the State had to prove that appellant intentionally and knowingly possessed the cocaine. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim.App.1995). Since the cocaine was only found in appellant's vicinity and not on his person, the State had to present evidence affirmatively linking him to the cocaine to prove that he possessed it knowingly. *Id.* To that end, the State argued that appellant's prior arrest was probative on the issue of intent or guilty knowledge and claimed that it had to introduce the evidence to establish that "the man knows what cocaine looks like."

With all deference to the trial court's perception of common experience and preferred vantage over the presentation of evidence, we cannot conclude that the evidence serves, in logic and common experience, any other purpose than to show appellant's bad character and conformity therewith. Evidence of appellant's prior drug conviction is precisely the type of evidence forbidden by Rule 404(b). The prior conviction does not make an elemental fact more probable; whether appellant knows or does not know "what cocaine looks like" is neither an element of the crime nor an issue raised by the defense. Further, the fact that appellant had cocaine in his possession in 1990 does not affirmatively link him to cocaine in the ashtray of a borrowed vehicle in 1994. The evidence also fails to make "an evidentiary fact that inferentially leads to an elemental fact" more probable; the only inference gleaned from it is that appellant knowingly possessed cocaine before so he must have knowingly possessed it again. While such an inference may expedite drug convictions, it is impermissible.

▮ The State also contends, alternatively, that it had to introduce the evidence to rebut the defensive theory offered in the defense's opening statement that appellant neither owned the vehicle nor had exclusive access to the vehicle on the day of his arrest. This argument is also unfounded. The defense did not claim, for example, that appellant had never been convicted for possession of cocaine, or that he did not know "what cocaine looked like." The opening statement merely introduced the idea that appellant's possession of the cocaine was questionable given the fact that appellant did not own the vehicle and did not have exclusive possession of the vehicle on the day of his arrest. The statement did not "open the door" to evidence of a prior conviction as alleged by the State.

▮ Having determined that the State's two grounds for admission of the prior conviction fall outside the zone of reasonable disagreement, we conclude that the trial court abused its discretion in allowing it into evidence. We next consider the harmfulness of the evidence under TEX.R.APP. P. 81(b)(2); *Montgomery*, 810 S.W.2d at 391.

▮ The harmless error rule requires reversal unless the appellate court determines "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). An appellate court should not focus on the propriety of the outcome of the trial but instead on the integrity of the process leading to the conviction and punishment. *Id.* Consequently, an appellate court should consider the following six factors when conducting a harm analysis:

1. The source of the error;
2. The nature of the error;
3. Whether or to what extent it was emphasized by the State;

4. Its probable implications;
5. How much weight a juror would probably place upon the error; and,
6. Whether declaring the error harmless would encourage the State to repeat it with impunity.

*Id.*

The evidence was offered by the State during its case-in-chief. Thus, the State was the source of the error, the nature of which was to make a connection between appellant's history and the current charges against him. Given that Officer Crummet was the State's final witness, the extraneous evidence punctuated the State's case as it rested, and further punctuated its case in closing argument when the prosecutor argued that "The best predictor of future behavior is past behavior" and "Lightning is striking twice" and "the more often it happens the less—the more ridiculous it becomes.... [I]t sheds light on the truth, which [sic] he is in knowing possession of cocaine." The record thus reveals that the evidence was heavily emphasized by the State.

We next consider the implications of the error and how much weight a juror would probably place upon the error. Without the extraneous evidence that appellant had been arrested for running a stop sign in the same vehicle, in the same neighborhood, at approximately the same early morning hour, and in possession of cocaine, the State only had evidence that (1) appellant was seen running a stop sign, (2) appellant had previously failed to pay his traffic tickets, and (3) there was cocaine in the ashtray of the vehicle. Other evidence presented during trial was that appellant complied with the officer's request for identification but could not produce proof of insurance, that there were no outstanding warrants for his arrest, that the vehicle was not reported stolen, and that when the officer asked appellant if he "would mind if [the officer] got in and took a look at the vehicle" and appellant replied, "No, not really."[7] Given this less than overwhelming evidence, it is very probable that the jury relied upon appellant's prior conviction in their deliberations and verdict.

Finally, we consider whether declaring the error harmless would encourage the State to repeat it with impunity. From the presentation of the State's case, it appears appellant was tried for a collateral crime as well as for this crime, and the State's intent to inflame the jury with the extraneous evidence is more than apparent. Given the apparent effectiveness of the extraneous evidence in light of the State's otherwise less than airtight case, we believe that declaring the error harmless would encourage the State to repeat the error with impunity.

Having considered all these factors, we cannot say beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. Accordingly, we hold that the trial court committed harmful error by admitting the extraneous offense evidence.

We REVERSE the judgment of the trial court and REMAND for a new trial.

---

**7.** For some reason, the officer interpreted the response to mean that appellant was denying entry to the vehicle when, applying basic English, it clearly suggests the opposite.