# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00244-CR[1]

**Sidney Alex Work, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILLS COUNTY, 35TH JUDICIAL DISTRICT
### NO. 3106, HONORABLE STEPHEN ELLIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Sidney Alex Work was charged with possession of less than one gram of a controlled substance (methamphetamine) in a drug-free zone and with tampering with evidence. *See* Tex. Health & Safety Code §§ 481.102(6), .115(a)-(b), .134(a), (d) (governing offense of possession of less than one gram of methamphetamine and elevating offense level to third-degree felony if "the offense was committed . . . in, on, or within 1,000 feet of . . . a playground"); Tex. Penal Code § 37.09(a)(1), (c) (setting out elements of offense of tampering with evidence and stating that offense

---

[1] The notice of appeal for this case was originally filed in this Court in June 2016, and the case was subsequently transferred to the El Paso Court of Appeals in August 2016 in compliance with a docket-equalization order issued by the supreme court. *See* Misc. Docket No. 16-9100, Transfer of Cases from Courts of Appeals (June 21, 2016); *see also* Tex. Gov't Code § 73.001 (authorizing transfer of cases). In April 2018, the supreme court issued another order transferring back to this Court this case and thirty eight other cases that had also been previously transferred to the El Paso Court. *See* Misc. Docket No. 18-9054, Transfer of Cases from Courts of Appeals (Tex. Apr. 12, 2018).

is, in general, third-degree felony). In addition, the indictment contained an enhancement paragraph alleging that Work was previously convicted of a felony for possessing a controlled substance. *See* Tex. Penal Code § 12.42(a) (enhancing punishment range for third-degree felony to that of second-degree felony if defendant was previously convicted of another felony offense). At the end of the guilt-or-innocence phase, the jury found Work guilty of the two charges. Work elected to have the district court determine his punishment, and the district court assessed Work's punishment at six years' imprisonment for the possession charge and two years' imprisonment for the tampering charge. In two issues on appeal, Work alleges that the evidence was insufficient to support his convictions and that the district court erred by admitting evidence regarding extraneous offenses that he allegedly committed. We will affirm the district court's judgment of conviction.

**BACKGROUND**

As set out above, Work was charged with possession of a controlled substance in a drug-free zone and tampering with evidence, and those charges stemmed from a traffic stop of Work's truck that was initiated by Officer James Purcell. Work was driving the truck at the time of the traffic stop, and Marla Morgan was riding in the passenger seat. During the trial, the following witnesses were called to the stand: Officer Purcell; Officer Johnny Brown, who assisted Officer Purcell with the investigation; and Herman Carrel, who was a forensic scientist and who performed testing on items recovered from Work's truck. In addition, the State played recordings taken from the dashboard cameras of Officer Purcell's and Officer Brown's patrol cars.

In his testimony, Officer Purcell chronicled his training and experience in drug interdiction, which he described as proactively looking "for criminal activity" in order "[t]o get drugs

2

and stolen merchandise . . . off the streets." In addition, Officer Purcell testified that as part of his training, he was taught to examine the appearance of people who he is interacting with "to tell if they have been using illegal narcotics," that he will compare people's appearances to their driver's license photos in order to look for changes to their appearances that are consistent with the use of illegal drugs, that people using illegal drugs often have a "drawn up" face with bags and dark circles under their eyes, and that individuals who attempt to get out of a car during a traffic stop rather than wait for the officer to come to the car door are often trying to prevent the officer from seeing "inside the vehicle."

Regarding the traffic stop, Officer Purcell explained that he decided to perform a traffic stop after observing Work drive eight miles over the speed limit, that Work pulled over within 66 feet of a city park designed for children and families, that Work opened his door shortly after pulling over in order to get out of the truck, and that Officer Purcell instructed Work to remain in the truck. In addition, Officer Purcell testified that he asked to see Work's driver's license and that Work's current appearance was different from the photo on his license in that Work now had a "drawn-up face" and "sunken-in eyes" and appeared to have lost a "[t]remendous amount of weight." Further, Officer Purcell related that Work was acting nervous. When describing Work, Officer Purcell suggested that Work's appearance and behavior were consistent with someone who was using methamphetamine.

Moreover, Officer Purcell recalled that he asked Work if there were any illegal drugs in the truck, that Work and Morgan both stated that there was nothing illegal in the truck, that Officer Purcell asked if he could search the truck, and that Work consented to the search.

3

Additionally, Officer Purcell testified that while he was searching the truck, Work admitted "that there was a broken marijuana pipe in the cup holder of the console." Further, Officer Purcell recalled that he found the marijuana pipe where Work said it would be and that there was marijuana debris throughout the truck, indicating that marijuana had been consumed in the truck. Moreover, Officer Purcell stated that he noticed a coffee cup with coffee inside it that was leaning "against the [center] console, between the console and the [passenger] seat," that he removed the lid off the cup, and that he discovered inside the cup "[a] bag of marijuana floating in the coffee" and "a bag of methamphetamine in the bottom of the cup underneath the marijuana." Additionally, Officer Purcell testified that he found fishing equipment in the truck, that Work admitted that the equipment was his, and that the bag containing the marijuana in the coffee cup was the same type of "fishing weight bag" that was found with the fishing equipment. Moreover, he recalled that Morgan and Work stated that the drugs did not belong to them but that Morgan later revealed that they let someone borrow the truck, that she found the marijuana and the methamphetamine in Work's truck after getting the truck back, that Work was unaware that the contraband was in the truck, that she put the contraband in the coffee cup, and that she "was going to dispose of it or throw it away."

Finally, when discussing his interaction with Work, Officer Purcell testified that Work admitted that he had previously been arrested for possession of illegal drugs, that Officer Purcell learned through the investigation that Work had a previous felony drug-possession conviction, and that Work admitted that he used methamphetamine "two to three months" before the night of the traffic stop.

4

After Officer Purcell finished his testimony, the State called Officer Brown to the stand. While on the stand, Officer Brown provided testimony similar to that of Officer Purcell's regarding his training, including being instructed to compare a person's appearance to that depicted in his or her driver's license because people that "use some of the harder drugs" can have "physical characteristics that will be very evident." In addition, Officer Brown testified that the truck belonged to Work.

Additionally, Officer Brown related that Work was very talkative and that Work's and Morgan's appearances were consistent "with people that use methamphetamine" because they had "[s]unken eyes, drawn-in face[s], dark colors around their eyes." Furthermore, Officer Brown recalled how Work initially stated that there was nothing in the truck but that Work changed his story and admitted there was a marijuana pipe in the truck after the search began, and Officer Brown explained that individuals who are hiding narcotics will often admit to smaller crimes in an effort to avoid being prosecuted for a greater offense. Finally, when discussing his interactions with Work and Morgan, Officer Brown related that Work said that someone borrowed his truck, that Work denied knowing about the drugs in the coffee cup, that Work admitted to knowing that there was marijuana in the pipe, that Work said that he would never have let the officers search the car if he knew there were drugs inside, that Morgan admitted that she put the drugs in the coffee cup, that Morgan asked the officers to let Work go, and that Morgan stated that the methamphetamine did not belong to them.

In addition to calling Officer Purcell and Officer Brown, the State called Carrel to the stand. In his testimony, he explained that he tested one of the substances recovered from the truck, that the substance was methamphetamine, and that the substance weighed 0.49 grams.

During the trial, the State also sought to admit into evidence recordings taken from the dashboard cameras from Officer Purcell's and Officer Brown's vehicles, and Work argued that multiple portions of the recordings should not be admitted into evidence and requested that the district court order the State to redact the allegedly improper portions. After considering the parties' arguments, the district court agreed to order the State to redact portions of the recordings, but the district court did not agree to order all of the redactions requested by Work.

The recordings are generally consistent with the testimonies of Officer Purcell and Officer Brown. In particular, Work repeatedly states that there is nothing illegal in the truck and admits that he has had prior involvement with law enforcement as a result of his drug use, that he has been arrested "for drugs," that he has a prior felony conviction, that he has used methamphetamine and marijuana in the past, that he used marijuana that day, that he used methamphetamine approximately two and a half to three months earlier, that he would inject methamphetamine, and that his injection sites were nearly healed. Moreover, Work said that he knew marijuana was in the truck, and when Officer Brown points out that the marijuana was in the cup with the methamphetamine, Work related that he thought that there was only ever marijuana in the pipe and that all of that was gone. In addition, Work states that someone else had driven his truck earlier and that he thought the truck was "clean" when he agreed to allow the search. Furthermore, at the time of Work's arrest, Officer Purcell talked with Work about whether he had

6

ever been read his *Miranda* warnings before. Finally, Morgan said that the methamphetamine was not theirs, that she put the drugs in the coffee cup, and that she intended to throw the cup and drugs away.

At the conclusion of the guilt-or-innocence phase, the district court gave the jury a jury charge providing instructions for the offenses of possession of a controlled substance and tampering with evidence and also containing instructions regarding when an individual may be held responsible for an offense committed by another person.

Following the closing arguments by both parties, the jury found Work guilty of both offenses.

## DISCUSSION

In his first issue on appeal, Work contends that the district court erred by allowing into evidence portions of the recordings from Officer Purcell's and Officer Brown's dashboard cameras. In his second issue on appeal, Work asserts that the evidence presented during the trial was legally insufficient to support his convictions. We will address Work's sufficiency challenges first and then address his arguments pertaining to the admission of the recordings.

**Legal Sufficiency**

*Possession of a Controlled Substance in a Drug-Free Zone*

On appeal, Work challenges the sufficiency of the evidence to support his possession conviction. In particular, Work asserts that there was "insufficient evidence in this case that directly

7

links [him] to" the methamphetamine. On the contrary, Work contends that the evidence established that Morgan "was the one who possessed" the methamphetamine.**²**

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011,

---

**²** As part of his sufficiency challenge, Work argues that the evidence pertaining to the extraneous offenses should not have been admitted and then asserts that without this evidence, the evidence pertaining to both the possession and the tampering charges would have been insufficient to support his conviction. However, as set out in the body of the opinion, in sufficiency reviews, appellate courts consider all of the evidence considered by the jury regardless of whether that evidence was rightfully admitted. *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd).

pet. ref'd). In reviewing the legal sufficiency of the evidence supporting a conviction, appellate courts consider "*all* evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (emphasis added). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014).

Under the Health and Safety Code, a person commits an offense if he "knowingly or intentionally possesses a controlled substance" in an amount that is less than one gram. Tex. Health & Safety Code § 481.115(a)-(b). Moreover, the Health and Safety Code specifies that the offense level for the offense listed above is elevated if "the offense was committed . . . in, on, or within 1,000 feet of . . . a playground." *Id.* § 481.134(a), (d). In this context, possess means to have "actual care, custody, control, or management." *Id.* § 481.002(38). Accordingly, "[t]o prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015). "Possession is a voluntary

9

act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." Tex. Penal Code § 6.01(b). "Intent can be inferred from the acts, words, and conduct of the accused." *Reed v. State*, 769 S.W.2d 323, 330 (Tex. App.—San Antonio 1989, pet. ref'd).

"[C]ontrol over contraband may be jointly exercised by more than one person." *Robinson v. State*, 174 S.W.3d 320, 325 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "[W]hen the accused . . . is not in exclusive possession of the place where the contraband is found, we cannot conclude that the accused had knowledge of and control over the contraband unless the State establishes an 'affirmative link' between the accused and the contraband—*i.e.*, independent facts and circumstances which affirmatively link the accused to the contraband so as to suggest that the accused had knowledge of the contraband and exercised control over it." *Id.* "An affirmative link may be established through either direct or circumstantial evidence." *Id.* "Regardless of whether the evidence is direct or circumstantial, it must establish, to the requisite level of confidence, that a defendant's connection to the contraband was more than fortuitous." *Trevino v. State*, Nos. 03-14-00009—00010-CR, 2016 WL 463658, at *2 (Tex. App.—Austin Feb. 5, 2016, pet. ref'd) (mem. op., not designated for publication). "Presence or proximity, when combined with other evidence, either direct or circumstantial, may be sufficient to establish the element of possession beyond a reasonable doubt." *Id.*

When discussing the need for affirmative links, the court of criminal appeals has noted that the following factors "may circumstantially establish the legal sufficiency of the evidence to provide a knowing 'possession'":

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (quoting *Evans v. State*, 185 S.W.3d 30, 35 (Tex. App.—San Antonio 2005), *rev'd on other grounds by Evans*, 202 S.W.3d 158). "Although several factors relevant to establishing an affirmative link may have been identified, the number of factors actually supported by the evidence is not as important as the 'logical force' they collectively create to prove that a crime has been committed." *Robinson*, 174 S.W.3d at 326 (quoting *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)).

In this case, the jury heard evidence from various law-enforcement officials that Work drove near and stopped his truck less than 1,000 feet from a playground and that less than one gram of methamphetamine was recovered from the truck. In addition, although the methamphetamine was found inside a coffee cup and although Morgan stated on the recordings that she placed the methamphetamine inside the coffee cup, the jury was also presented with evidence establishing that Work owned the truck and was driving it on the night in question and that the coffee cup was found in the front seat between where Work and Morgan had been sitting. *See id.* at 326-27 (determining that evidence was sufficient to support possession conviction, in part, because

11

defendant "had control over the truck and its contents" and because contraband "was within the vicinity of and easily accessible to" defendant). Furthermore, the police officers testified that Work was acting nervous; that Work attempted to get out of the truck instead of waiting for Officer Purcell to approach the truck, which was consistent with someone trying to prevent a police officer from coming near a vehicle; that Work's appearance had changed significantly from the photo on his identification card; and that Work's appearance on the night of the his arrest was consistent with someone who was using illegal drugs. In addition, during the trial, the jury was shown evidence indicating that the police officers located a marijuana pipe on the center console of the truck near where the coffee cup was placed, that Work initially denied that there was any contraband but later admitted after the search had started that there was a marijuana pipe inside the truck, that there was marijuana debris inside the truck, that the presence of the remnants of marijuana was consistent with the use of marijuana inside the truck, and that the bag containing the marijuana found with the methamphetamine was similar in appearance to the bags found with Work's fishing equipment in the back of the truck. *See Williams v. State*, No. 03-09-00169-CR, 2010 WL 3515813, at *6 (Tex. App.—Austin Sept. 10, 2010, pet. ref'd) (mem. op., not designated for publication) (noting when determining that evidence was sufficient to support possession conviction that "drug paraphernalia was present in the house"); *Berger v. State*, No. 03-05-00518-CR, 2006 WL 1788274, at *1, *5 (Tex. App.—Austin June 30, 2006, pet. ref'd) (mem. op., not designated for publication) (discussing in issue regarding sufficiency of evidence for conviction for "possession or transport of certain chemicals with intent to manufacture a controlled substance" that defendant "possessed other contraband, namely marijuana, when he was arrested" and that "marijuana was found in the center

12

console of the truck, in plain view"). Furthermore, the jury was presented with evidence that Work admitted that he had previously been convicted of a felony drug charge and then admitted that he had used methamphetamine within a few months of the arrest and consumed marijuana on the day of the arrest. Finally, the jury heard on the recordings Work initially state that there was no contraband in the truck and then admit after the search began that he knew that there was marijuana in the pipe and also heard Work state that he knew there was marijuana in the truck.

In light of the testimony from the law-enforcement personnel as well as the contents of the recordings, the jury could have reasonably inferred that Work exercised actual care, custody, control, or management of less than one gram of methamphetamine within 1,000 feet of a playground and that Work was conscious of his connection with the methamphetamine and knew what it was. Accordingly, we must conclude that the evidence is legally sufficient to support Work's conviction for possession of a controlled substance in a drug-free zone and, therefore, overrule this portion of Work's second issue on appeal.

*Tampering With Evidence*

In this issue, Work also contends that there was insufficient evidence to support his conviction for tampering with evidence. In particular, Work argues that the evidence is insufficient because the evidence presented at trial demonstrated that Morgan was the one who "tampered with the evidence."

Under the Penal Code, a person commits the offense of tampering with physical evidence if he, "knowing that an investigation or official proceeding is pending or in progress, . . . alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility,

13

or availability as evidence in the investigation or official proceeding." Tex. Penal Code § 37.09(a)(1); *see also Hollingsworth v. State*, 15 S.W.3d 586, 595 (Tex. App.—Austin 2000, no pet.) (explaining that "[u]nder section 37.09, appellant must have concealed the cocaine with the *intent* to impair its availability as evidence in some kind of investigation"). "[I]n cases of tampering with evidence, not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation or proceeding." *Thornton v. State*, 425 S.W.3d 289, 304 (Tex. Crim. App. 2014). In fact, "[t]here may be cases in which the most inculpating inference the evidence would support is that the accused simply intended to dispossess himself of the object in order to more plausibly disclaim any connection to it," and "'it is within the province of the factfinder to choose which inference is most reasonable.'" *Id.* (quoting *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009)). Moreover, as specified in the jury charge in this case, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code § 7.02(a)(2).

As set out above, when attacking the sufficiency of the evidence, Work contends that the evidence presented at trial showed that Morgan, not Work, was the only individual who could have been guilty of the offense of tampering. However, the jury charge in this case provided an instruction on the law of parties, and the jury could have found Work guilty of the offense as a party to the offense rather than as a principal. Regarding the offense of tampering alleged in this case, we do note that the circumstances present in this case differ somewhat from a more typical tampering-by-concealment case in which the police observe behavior indicating that a defendant had undertaken

14

steps to conceal something from an officer during an investigation or in which a defendant admits that he was attempting to conceal evidence from the police. *See, e.g.*, *Thornton*, 425 S.W.3d at 305-06 (determining that jury could have concluded that defendant intended to conceal crack pipe rather than simply dispossess property, in part, because jury heard evidence that defendant "stealthily reached in [to his pocket]" when attempting to dispose of pipe, which supported "a finding that he intended that the officers *never* notice the pipe," and because defendant "'palmed' the pipe as he removed it from his pocket," which was "probative evidence of an *intent* to conceal the pipe" from officer's view); *Hines v. State*, 535 S.W.3d 102, 107, 110-11 (Tex. App.—Eastland 2017, pet. ref'd) (affirming conviction where video recording from inside police car showed defendant pouring substance in back seat under his body, where police did not find substance until after defendant got out of patrol car, and where police recovered "methamphetamine from the back seat of the patrol car"); *Lemarr v. State*, 487 S.W.3d 324, 329 (Tex. App.—Amarillo 2016, no pet.) (concluding that evidence was sufficient where admissions by defendant established "that she had good reason to believe the baggie contained a controlled substance," that "she intentionally poured the contents of that baggie out during the initial detention," and "that she placed the baggie in the door pocket because she did not want to get caught with the drugs").

Although the police did not see Morgan hide the drugs at issue, Morgan did not disclose any knowledge about the contraband until after the police found it, and after the police found the drugs, Morgan admitted she placed the drugs in the coffee cup. Moreover, the coffee cup had a lid on it and had coffee in it, and the coffee cup was found in Morgan's seat. In addition, the methamphetamine was found underneath a bag of marijuana. Even though Morgan did not state

15

precisely when she placed the drugs in the cup, the jury could have reasonably inferred from Morgan's admissions and from the manner and location in which the drugs were stored that Morgan placed the drugs in the coffee cup after Officer Purcell initiated a traffic stop and that Morgan did so in an effort to conceal the drugs from the officers knowing that an investigation was pending or in progress. *See* Tex. Penal Code § 37.09(a)(1).

In addition, as discussed earlier in the opinion, the evidence presented during the trial was sufficient to establish that Work possessed the contraband in question. *See Davis v. State*, 195 S.W.3d 311, 320 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (providing that "[t]hough mere presence does not automatically make one a party to a crime, it is a circumstance tending to prove party status and, when considered with other facts, may be sufficient to prove that the defendant was a participant"). Moreover, the evidence demonstrated that shortly after stopping his truck, Work opened his door in an effort to get out of the truck, which supported an inference that Work did not want Officer Purcell to approach the vehicle. *See Gant v. State*, 116 S.W.3d 124, 132 & n.4 (Tex. App.—Tyler 2003, pet. ref'd). Furthermore, Work repeatedly denied that there was any contraband in the car besides the marijuana pipe, and Officer Brown testified that individuals who know that there are narcotics in a vehicle will often make admissions regarding lesser offenses in an effort to encourage the investigating officers to discontinue their investigation.

In light of the preceding, the jury could have reasonably inferred that Work, "acting with intent to promote or assist the commission of the offense" of tampering, solicited, encouraged, directed, aided, or attempted to aid Morgan in her efforts to conceal the illegal drugs. *See* Tex. Penal Code § 7.02(a)(2). Accordingly, we must conclude that the evidence is legally sufficient to support

16

Work's conviction for tampering and, therefore, overrule this portion of Work's second issue. *See*

*Davis*, 195 S.W.3d at 320 (explaining that "[e]vidence is sufficient to convict under the law of

parties where the defendant is physically present at the commission of the offense and encourages

its commission by words or other agreement" (quoting *Ransom v. State*, 920 S.W.2d 288, 302 (Tex.

Crim. App. 1996) (op. on reh'g)).

For the reasons previously given, we overrule Work's second issue on appeal.

**Extraneous Offenses**

In his first issue on appeal, Work contends that the district court erred by allowing

into evidence four sections of the dashboard camera recordings that Work asked the district court

to order the State to redact. In particular, Work contends that those statements pertained to extraneous

offenses, were unfairly prejudicial, and were not admissible. *See* Tex. R. Evid. 403, 404(b).

Appellate courts review a trial court's ruling regarding the admission or exclusion

of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim.

App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion

if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*,

86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*,

153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that

the trial court's decision "is reasonably supported by the record and is correct under any theory of

law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In

addition, an appellate court reviews the trial court's ruling in light of the record before the court "at

17

the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Under the Rules of Evidence, "[r]elevant evidence is admissible unless" provided otherwise by "the United States or Texas Constitution," "a statute," the Rules of Evidence, or "other rules prescribed under statutory authority," and "[i]rrelevant evidence is not admissible." Tex. R. Evid. 402. Moreover, "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." *Id.* R. 401. However, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* R. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted). Moreover, reviewing courts should bear in mind that trial courts are given "an especially high level of deference" regarding a determination that evidence should be admitted under Rule 403. *See United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007).

Regarding the admissibility of evidence under Rule 403, courts performing a Rule 403 analysis should balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted); *see Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (explaining that "probative value" refers to how strongly evidence makes existence of fact more or less probable and to how much proponent needs evidence and that "unfair prejudice" considers how likely it is that evidence might result in decision made on improper basis, including emotional one). When determining the probative value of past criminal behavior, courts should consider "the closeness in time between the extraneous offense and the charged offense" as well as "the similarities between the extraneous offense and the charged offense." *Kiser v. State*, 893 S.W.2d 277, 281 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *see Morrow v. State*, 735 S.W.2d 907, 909-12 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd).

Furthermore, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but this type of "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or

19

lack of accident." Tex. R. Evid. 404(b).  In addition, courts have explained that "extraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination." *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

"When the defendant's intent to commit the offense charged is at issue, the relevance of an extraneous offense derives from the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all." *Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.); *see also Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016) (explaining that doctrine of chances "tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance" and that defense can become "less believable" when defendant has made same unlikely claim multiple times).  "For the doctrine to apply, there must be a similarity between the charged and extraneous offenses, since it is the improbability of a like result being repeated by mere chance that gives the extraneous offense probative weight." *Brown*, 96 S.W.3d at 512.  "The degree of similarity required, however, is not as great when intent is the material issue as when identity is the material issue and the extraneous offense is offered to prove *modus operandi*." *Id.* at 512-13.

During the trial, Work argued that various exchanges on the recordings from the dashboard cameras were evidence of extraneous offenses and should not be admitted under Rule of Evidence 404 and that the probative value of the exchanges is substantially outweighed by the danger of unfair prejudice under Rule of Evidence 403.  *See* Tex. R. Evid. 403, 404(b).  After considering

the arguments of the parties, the district court ordered the State to redact several statements on the recordings but denied Work's request for redaction as it pertained to the following exchanges:

(1) Officer Brown asks Work if he had ever been arrested and for what, and Work answered that he had been arrested before "for drugs" (14:00);

(2) Work admits that he has a prior felony conviction and made the admission in relation to a discussion about the use of illegal drugs[3] (11:00);

(3) Officer Purcell states that he is going to read Work his *Miranda* rights and that Work knows what his rights are, and Work responds, "yes sir." Officer Purcell then states that he "figured that" Work had been read those rights before; and (55:49)

(4) Officer Purcell asks Work, "how long has it been since you used methamphetamine . . . or weed?" Work replied, "Weed. It's been Today. Meth. Its been probably three or two and a half months." Officer Purcell then asked Work "how did you use it?" Work indicated that he used a needle. Officer Purcell asked where on his body Work injected himself, and Work stated that he did so on his arm and that the injection sites were healing.

When making its ruling, the district court explained that those statements were admissible to show knowledge, intent, and identity under Rule of Evidence 404(b) and to rebut a defensive theory that Morgan was in sole possession of the contraband, and the district court also

---

[3] Prior to trial, Work filed various motions highlighting the various statements that he believed should not be admitted and specifically pointed to portions of the recordings in which Work admitted to having a prior felony conviction for possession of illegal drugs. Although the district court denied Work's request to have that portion redacted, our review of the redacted versions of the recordings indicates that the portions of the recordings corresponding to the time stamp specified by Work in his motions were in fact redacted. In another portion of the recordings and in the context of a conversation regarding drug usage, Work did admit that he had a prior felony conviction but did not specifically state that the conviction was for drug possession. However, given the context in which Work's admission was made and in light of the arguments by the parties in their briefs, we will treat Work's statement as an admission to a prior felony conviction for drug possession.

21

determined that the probative value outweighed any danger of unfair prejudice. *See id.* R. 403, 404(b).

On appeal, Work contends that the district court abused its discretion by concluding that the evidence of his extraneous offenses was admissible because the evidence constituted character evidence that is inadmissible under Rule of Evidence 404. *See id.* R. 404(b)(1). In other words, Work argues that the State was seeking to admit the statements "for exactly the reason the rules forbid it: *because he has possessed drugs in the past he was in possession of drugs when he was pulled over*." Further, Work argues that the evidence does not fit within the permitted uses under Rule of Evidence 404(b). *See id.* R. 404(b)(2). Regarding the exchange about whether he had been read his *Miranda* rights before, Work urges that "[t]he *only* implication is that [he] has been arrested before and the *only* reason this evidence could be offered is for character conformity." Regarding the statement that Work had been convicted of a prior felony, Work argues that his prior conviction was for possession of cocaine, not methamphetamine. In light of the fact that he was previously convicted of possessing a different controlled substance, Work contends that his prior conviction "does not make it more likely that he possessed [a] different narcotic." Regarding Rule 403, Work contends that the exchanges should not have been played for the jury "*because* of the potential of the extraneous evidence to impress the jury in irrational and indelible ways" and that "the jury most likely convicted" him because of the extraneous offense evidence.

As an initial matter, we note that it is not entirely clear that this issue has been preserved for appeal. *See* Tex. R. App. P. 33.1 (setting out manner in which issue can be preserved for appellate consideration). Although Work asserted that those statements should not have been

22

admitted under Rules 403 and 404(b) and although Work obtained a running objection pertaining to the statements on the recordings, Officer Purcell testified regarding many of those same statements during the trial, and Work did not object to those portions of Officer Purcell's testimony. *See Mitchell v. State*, 68 S.W.3d 640, 643 (Tex. Crim. App. 2002) (explaining that if previously objected-to evidence is introduced from another source without objection, defendant may not challenge admission on appeal). For purposes of resolving this issue on appeal, we will assume without deciding that Work's complaints have been preserved for appellate consideration.

As set out above, Work was charged with possessing methamphetamine. To be guilty of that offense, a person must "knowingly or intentionally possess" methamphetamine. *See* Tex. Health & Safety Code § 481.115(a); *see also Hudson v. State*, 128 S.W.3d 367, 373-74 (Tex. App.—Texarkana 2004, no pet.) (explaining that proof of intent or knowledge is essential element of offense of possession). During his opening statement, Work argued that the evidence will "show that [he] didn't know" that there was methamphetamine in the car and did not have the requisite "knowledge or intent" and that the evidence will show that the coffee cup "was found in the passenger seat where [Morgan] was sitting."

Although Work contends that his prior conviction was for possessing a different illegal drug, it does not appear that the nature of the contraband from the prior offense was disclosed during the guilt-or-innocence phase. In any event, the prior offense involved behavior similar to the misconduct alleged in this case. In light of those similarities, we cannot conclude that the district court abused its discretion by determining that evidence of the prior conviction was relevant to Work's knowledge or intent in this case. Regarding the exchange about whether Work had been

given the *Miranda* warnings before, nothing in that exchange indicated that Work had been arrested for any offense other than the drug offense that Work previously admitted to and that the district court determined was admissible under Rule 404(b). In addition, the remaining statements indicated that Work had been arrested for drug use and that he recently used methamphetamine and marijuana, which were both found inside the truck. When considering similar issues, courts have determined that "testimony that" a defendant "had at other times used" used illegal drugs is "circumstantial evidence that" a defendant "intentionally or knowingly possessed" illegal drugs at the relevant time "and [i]s admissible to rebut the defensive theory that [a defendant] did not have the requisite knowledge or intent." *See Wingfield v. State*, 197 S.W.3d 922, 925 (Tex. App.—Dallas 2006, no pet.); *see also Hung Phuoc Le v. State*, 479 S.W.3d 462, 470-71 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (noting that defendant raised issue of "whether he knowingly or intentionally possessed" marijuana found in his truck, explaining that "evidence that the appellant had on other occasions committed similar offenses to the one he is charged with serves to reduce the possibility that the act in question was done with innocent intent," and concluding that evidence of prior possession of marijuana "was admissible to rebut the defensive theory that appellant did not have the requisite knowledge or intent"); *Melton v. State*, 456 S.W.3d 309, 315 (Tex. App.—Amarillo 2015, no pet.) (concluding that trial court did not abuse its discretion by allowing into evidence defendant's statement that he "used methamphetamine in the past" in trial for possession of methamphetamine); *Hestand v. State*, No. 05-06-01320-CR, 2007 WL 4239200, at *1, *6 (Tex. App.—Dallas Dec. 4, 2007, pet. struck) (not designated for publication) (determining that testimony that witness had previously seen defendant use methamphetamine was admissible "to rebut the

24

defensive theory that [defendant] did not have the requisite intent or knowledge" in trial for offense of manufacturing methamphetamine); *Turner v. State*, No. 01-98-00862-CR, 1999 WL 312333, at *1 (Tex. App.—Houston [1st Dist.] May 13, 1999, pet. ref'd) (not designated for publication) (explaining that evidence that defendant "had knowingly transported cocaine before was admissible to establish his knowledge and intent" in trial for "possession with intent to deliver cocaine").[4]

For all of these reasons, we cannot conclude that the district court abused its discretion by concluding that the statements were admissible under Rule 404(b) as evidence pertaining to Work's knowledge or intent.

Turning to Rule 403, we note, as discussed above, that the extraneous-offense evidence was relevant to establishing Work's knowledge or intent. Moreover, although the

---

[4] In his brief, Work asserts that "there was no evidence [that he] disputed that he knew what methamphetamine looked like, and therefore knowledge was not a legitimate exception to allow conformity evidence into the record." As support for this proposition, Work refers to a case by one of our sister courts of appeals. *See Perry v. State*, 933 S.W.2d 249, 254 (Tex. App.—Corpus Christi 1996, pet. ref'd). In *Perry*, the defendant was found guilty of possessing cocaine "with intent to distribute." *Id.* at 250. During the trial, a police officer was allowed "to testify about [Perry]'s prior arrest for possession of cocaine." *Id.* at 253. On appeal, our sister court determined that the "[e]vidence of [Perry]'s prior drug conviction is precisely the type of evidence forbidden by Rule 404(b)" because "[t]he prior conviction does not make an elemental fact more probable." *Id.* at 254. Moreover, when addressing the State's assertion that the evidence was admissible to show that Perry knew what cocaine looked like because of his prior conviction, our sister court reasoned that "whether appellant knows or does not know 'what cocaine looks like' is neither an element of the crime nor an issue raised by the defense." *Id.* In addition, the court explained that "the fact that appellant had cocaine in his possession in 1990 does not affirmatively link him to cocaine in the ashtray of a borrowed vehicle in 1994" and that "the only inference gleaned from it is that appellant knowingly possessed cocaine before so he must have knowingly possessed it again." *Id.* at 254. Assuming for the sake of argument that the analysis from *Perry* bears upon the facts of this case, we are not bound by the analysis from our sister court. Although we recognize the concerns identified by our sister court, we are more persuaded by the analyses from some of our other sister courts of appeals summarized above indicating that evidence of prior drug convictions is admissible under Rule 404(b) in the circumstances present here.

25

recordings did not indicate when the prior conviction, arrest, and reading of *Miranda* rights occurred and although the date of the prior conviction does not appear to have been disclosed during the guilt-or-innocence phase, *see Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd) (explaining that remoteness reduces probative value of extraneous offense "because, logically, the passage of time allows things and people to change"); *Reyes v. State*, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi 2002, pet. ref'd) (noting that remoteness of prior offenses affects their probative value), we note that courts have found in some cases that even lengthy lapses in time do not completely deplete the probative value of the evidence, *see, e.g.*, *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985) (concluding that four-to-six-month lapse in time was sufficiently small for extraneous offense to have probative value); *Corley v. State*, 987 S.W.2d 615, 617, 621 (Tex. App.—Austin 1999, no pet.) (concluding that crime that occurred thirteen years before trial was not too remote). In addition, on the recordings, Work admitted to possessing and using methamphetamine within a few months of the traffic stop at issue and to possessing and using marijuana within a day of the traffic stop. Moreover, "remoteness is not the only factor to consider when analyzing the probative value of evidence of an extraneous offense." *Robisheaux v. State*, 483 S.W.3d 205, 219 (Tex. App.—Austin 2016, pet. ref'd). Although Work asserts that the prior conviction was for possessing a different controlled substance than methamphetamine and although Work's admission to possessing and using marijuana was a different offense than the one at issue in the underlying trial, those prior offenses involved similar allegations of misconduct. Accordingly, the district court could have determined that the probative value of the extraneous-offense evidence

26

weighed in favor of admission. *Cf. Hung Phuoc Le*, 479 S.W.3d at 471 (finding that probative value of evidence of prior possession of marijuana "weighs heavily in favor" of admission).

Regarding the State's need for the evidence, we note that in deciding whether the evidence was needed, courts should consider whether the proponent had other evidence to establish the fact of consequence, how strong the other evidence was, and whether the "fact of consequence related to an issue that is in dispute." *See Erazo v. State*, 144 S.W.3d 487, 495-96 (Tex. Crim. App. 2004). As discussed previously, Work was not found in exclusive possession of the contraband, and the testimony at trial demonstrated that the contraband was discovered in a cup resting on Morgan's seat. Moreover, Morgan stated on the recordings that she found the contraband in the truck after Work allowed someone else to use the truck and that she placed the drugs in the coffee cup. Further, neither Morgan nor Work testified during the trial, and during his opening statement, Work presented a defensive theory that he did not know the drugs were in the truck and did not have possession of them. However, as set out above, much of the extraneous-offense evidence was also admitted through the testimony of Officer Purcell. For these reasons, the district court could have determined that the State's need for this evidence neither weighed in favor of nor against the admission of the evidence.

Turning to the potential for the evidence to suggest a decision on an improper basis, *see Gigliobianco*, 210 S.W.3d at 641 (stating that evidence might encourage decision on improper basis if it arouses jury's "hostility or sympathy . . . without regard to the logical probative force of the evidence"), we note that the evidence did concern prior criminal conduct by Work, but nothing on the recordings indicated that the prior offenses involved allegations any more serious or

27

inflammatory than the charged offenses at issue, *cf. Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) (explaining that "[w]hen the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice"). Moreover, before the State introduced evidence of the prior offenses and later in the jury charge, the district court gave a limiting instruction informing the jury that it could only consider the evidence for limited purposes and only if the jury determined beyond a reasonable doubt that Work committed the prior offenses. *See id.* (noting that "any impermissible inference of character conformity can be minimized by the use of a limiting instruction"). Accordingly, the district court could have reasonably determined that this factor either weighed in favor of admission of the evidence or was neutral regarding the admission.

In addition, the district court could have reasonably determined that the jury would not give undue weight to the evidence regarding the prior offenses because the evidence would not address a complex subject matter. *See Gigliobianco*, 210 S.W.3d at 641 (explaining that scientific evidence is type of evidence that might mislead jury not properly equipped to consider probative value). Accordingly, the district court could have reasonably determined that this factor weighed in favor of admission.

Turning to the potential for the evidence to confuse or distract the jury and the amount of time needed to develop the evidence, we note that the guilt-or-innocence phase of the trial was held over two days, that the reporter's record was over 300 pages in length, that the two recordings were each an hour or more in length, and that the portions of the recording at issue were, at most,

28

a few minutes in length in total. Moreover, the evidence pertained to self-contained acts that were distinct from the charged offenses. Accordingly, the district court could have reasonably determined that these factors weighed in favor of admission of the evidence.

Given our standard of review, the presumption in favor of admissibility, and the resolution of the factors discussed above, we cannot conclude that the district court abused its discretion by overruling Work's Rule 403 objection. *Compare Schiele v. State*, No. 01-13-00299-CR, 2015 WL 730482, at *7, *8 (Tex. App.—Houston [1st Dist.] Feb. 19, 2015, pet. ref'd) (mem. op., not designated for publication) (determining that trial court did not abuse its discretion where half of factors relevant to Rule 403 analysis weighed in favor of admissibility), *with Russell v. State*, 113 S.W.3d 530, 543-49 (Tex. App.—Fort Worth 2003, pet. ref'd) (determining that trial court erred by admitting evidence of extraneous offenses where evidence was 30 percent of testimony, where State's need for evidence was low "because ample evidence" existed regarding intent, and where evidence of extraneous offense was "more heinous" than charged offense).

For all of these reasons, we overrule Work's first issue on appeal.

**CONCLUSION**

Having overruled Work's two issues on appeal, we affirm the district court's judgment of conviction for possession of a controlled substance in a drug-free zone and for tampering with evidence.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   May 24, 2018

Do Not Publish